Joseph A. Charley, Appellant *v.* Jack Felzer et al., Appellees.

Argued March 4, 1981, before President Judge CRUMLISH and Judges CRAIG and WILLIAMS, JR., sitting as a panel of three.

*John G. McDougall,* for appellant.

*Carmen P. Belefonte, Kassab, Cherry, Curran & Archbold,* for appellees.

OPINION BY PRESIDENT JUDGE CRUMLISH, May 4, 1981:

Joseph A. Charley filed a complaint in mandamus seeking to compel the Upper Darby Township Civil Service Commission (Township Civil Service Commission) to give him a hearing into the causes of his alleged demotion from the rank of Superintendent of Police to Lieutenant.

The complaint was dismissed by the Delaware County Common Pleas Court. We reverse.

On July 17, 1973, the Upper Darby Township Board of Commissioners (Board of Commissioners) nominated Charley, then a lieutenant, to be Superintendent of Police and wanted him to take the civil service examination. The Township Civil Service Commission, in a letter of July 23, 1973, informed the Commissioners that it "examined" Charley on the 20th and it "passed him unanimously as qualified to fill the vacancy of Superintendent of Police." By resolution, on July 25, 1973, the Board appointed Charley Superintendent of Police. In January, 1974 the Commissioners reappointed him.

In January, 1975, the Township adopted a Home Rule Charter providing for a mayor and 11-member Council. By virtue of Article VIII, Section 803 of the Home Rule Charter, department heads are appointed by the mayor with the approval of six members of the Council. Department heads serve under the supervision and control of the mayor and may be discharged by the mayor with the approval of the Council.[1]

In January, 1976, Council approved the mayor's acting reappointment of all sitting department heads. On June 1, 1976, the mayor replaced Acting Superintendent Charley. He requested a hearing before the Civil Service Commission; the request was denied. He then filed his action in mandamus. In dismissing the mandamus action and his exceptions to the complaint, the common pleas court concluded that his

[1] We note that Section 302(b)(v) of the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, P.L. 184, *as amended*, 53 P.S. §1-302(b)(v), provides that "[n]o municipality shall . . . enact any provision inconsistent with any statute heretofore enacted by the General Assembly affecting the rights, benefits or working conditions of any employe of a political subdivision of the Commonwealth."

appointment to Superintendent of Police was not covered by the regulations of the Civil Service Commission. Subsequently, the court of common pleas also dismissed his exceptions to its initial findings of fact and conclusions of law.

The extraordinary writ of mandamus only issues to compel the performance of a ministerial act or a mandatory duty and only when there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and the want of any other appropriate and adequate remedy. *Frederick v. City of Butler,* 45 Pa. Commonwealth Ct. 621, 405 A.2d 1343 (1979). In order to show a clear right to a civil service hearing, Charley was required to prove that he was indeed classified civil service by virtue of a specific provision of the civil service law. *Gallagher v. Springfield Township Board of Commissioners,* 438 Pa. 280, 264 A.2d 699 (1970). "In an action in mandamus, our scope of review is to determine whether or not the lower court abused its discretion or committed an error of law and whether or not sufficient evidence supports the lower court's findings." *Local 1400, Chester City Firefighters Association v. Nacrelli,* 30 Pa. Commonwealth Ct. 242, 244-45, 373 A.2d 472, 474 (1977).

Section 638 of The First Class Township Code (Code), Act of June 24, 1931, P.L. 1206, *as amended,* added by Section 20 of the Act of May 27, 1949, P.L. 1955, *as amended,* 53 P.S. §55638, provides that

> [i]n the case of a vacancy in the office of chief of police . . . or equivalent official, the township commissioners may nominate a person to the [township civil service] commission. It shall thereupon become the duty of the [township civil service] commission to subject such person to a non-competitive examination and if such person shall be certified by the

[township civil service] commission as qualified he may then be appointed to such position and thereafter shall be subject to all of the provisions of this subdivision.

The simple issue in this case is whether a "noncompetitive examination" was conducted. For the purpose of enabling the court below to make that determination, the Commission properly offered and had put into evidence the testimony of various witnesses explaining the proceedings of the Township Civil Service Commission. *See Detoro v. Pittston,* 344 Pa. 254, 25 A.2d 299 (1942).

In concluding that Charley was not appointed Superintendent of Police in strict compliance with the civil service provisions, the court below found that he had never been subjected to an oral or written examination. We disagree that a "non-competitive examination" had not been conducted. Aside from mentioning it in Section 630, the Code provides no further guidance as to the exact meaning of the phrase "non-competitive examination." The case law is similarly barren. We consider then the common definitions of the words. "Examination" may mean a search, investigation or other form of scrutiny or a test designed to record progress or qualifications. Webster's Third New International Dictionary of the English Language, Unabridged 790 (1966) (Webster). No doubt the latter meaning is the intention of the Code, *see* Sections 635-642, 53 P.S. §§55635-55642, and of the Township Civil Service Commission's rules and regulations,[2] in the instance of appointment to positions in the police force and of regular promotions therein. But we here deal with the filling of a vacancy

---

[2] Pursuant to Section 630 of the Code, 53 P.S. §55630, township civil service commissions have the power to prescribe, amend and enforce rules and regulations carrying into effect the provisions of Article VI, Subdivision (d) of the Code.

in the office of police superintendent. The other word in the phrase, "non-competitive" means being *not* subject to "a common struggle for the same object esp. among individuals of relatively equal standing" or to "a contest between rivals: a match or trial between contestants." Webster 464. We conclude that insertion of "non-competitive" renders more appropriate the first definition of "examination."

The record, including the testimony of Charley, the former president of the board of Commissioners, and a member of the Township Civil Service Commission, establishes that the Township Civil Service Commission interviewed him, asked him questions about his specific qualifications and aspects of the position of police superintendent, and reviewed his credentials. This met the requirements of the statute and, in context, the Township's Civil Service regulations.[3]

Accordingly, we enter the following

ORDER

The order of the Court of Common Pleas of Delaware County, docketed at Civil Action—Law No. 76-9719, dated December 3, 1979, is reversed. The Upper Darby Township Civil Service Commission is hereby directed to conduct a hearing in the case of Joseph A. Charley.

Judge WILKINSON, JR. did not participate in the decision in this case.

---

[3] We reject appellees' argument that the Township Civil Service Commission's rules and regulations required a written examination. There is no express mention in those rules and regulations of any written component of the "non-competitive examination" for appointment to the position of Superintendent of Police. A reading of various sections of those rules and regulations supplies support for both sides of the issue. Indeed, the testimony of a member of the Township Civil Service Commission that there exists no test for the position of police superintendent demonstrates the double-edged nature of all these facts.